Dear Mr. Jackson:
I am in receipt of your request for an opinion from the Attorney General's office relating to the respective rights and duties of police jurors and sheriffs in dealing with transferred prisoners.
Your letter states that the East Carroll Parish Police Jury passed an ordinance that increased the legal amount to be paid a parish prison for East Carroll Parish pre-trial inmates from $3.50 to $4.50 per day. However, the police jury never passed an ordinance authorizing the payment of twenty-three dollars ($23.00) per day for security risk prisoners. The police jury did not participate with the sheriff in negotiating the contract with new, outside parishes where the East Carroll Parish prisoners were transferred. The police jury received written confirmation in May of 2002 from one of the parish prisons, the Richland Detention Facility, that the East Carroll Parish Police Jury would only be paying four dollars and fifty cents ($4.50) per day for regular inmates and that it would only be paying twenty-three dollars ($23.00) per day for security risk prisoners. Despite Richland Detention Facility's acknowledgement of East Carroll Parish Police Jury's fee schedule, the Detention Center charged the police jury the higher rate of twenty-three dollars ($23.00) for all prisoners.
You first ask whether the East Carroll Parish Sheriff in negotiating the amount to be paid to outside parish prisons must comply with the parameters set forth in the parish ordinance dealing with the amount to be paid for the keeping and feeding of prisoners.
In answer to your question, the controlling statutes are La. R.S.15:706 (B) and R.S. 33:1432(1).
La. R.S. 15:706 (B) provides that:
 [t]he sheriff to whom the transfer of the prisoner or prisoners is made shall receive for the maintenance of such prisoner or prisoners, the same compensation authorized by law for the keeping and feeding of prisoners, which shall be paid by the parish transferring the prisoner or prisoners.
This statute uses the term "shall" and therefore mandates the compensation paid to the local sheriff shall be the same as that paid to the sheriff to whom the prisoners are transferred.
The amount that the sheriff "shall receive" is defined in La. R.S.33:1432 (1). This statute provides, in pertinent part, that:
 [t]he compensation, fees, and costs allowed sheriffs, the parish of New Orleans excepted, for all services in criminal matters, shall be the following:
 (1) [f]or keeping and feeding of prisoners in jail not less than three dollars and fifty cents per diem for each prisoner. . . .
We believe that the East Carroll Parish Sheriff in negotiating the amount to be paid to the outside parish prisons did not have to limit the cost of keeping and feeding prisoners to be transferred to the amount set forth in the parish ordinance dealing with the issue.
The rationale for this rule is well-stated in Attorney General Opinion Number 87-493.
 It is the opinion of this office that the police jury's liability for the care and keeping of parish prisoners (those not sentenced to the custody of the Louisiana Department of Public Safety and Corrections) is not limited to $3.50 per day as provided for in R.S. 33:1432 (1).
 In Amiss v. Dumas, 411 So.2d 1137, 114 [sic] (1st Cir. 1982), writ denied 415 So.2d 940, the Court held that the governing authority of a parish is responsible for "the expenses of establishing, maintaining and operating the jail and for all the expenses of feeding, clothing and providing medical treatment to the prisoners. . . ."
 The Court, in Amiss v. Dumas, made it clear that prisoners are wards of the parish and if the cost of care of parish prisoners exceed [sic] $3.50 per day then the parish is responsible for that excess cost.
 * * * It is the opinion of this office that under Amiss v. Dumas the $3.50 per diem provided in R.S. 33:1433 [sic] covers only the cost of the food consumed by the parish prisoners. All other expenses associated with sustaining parish prisoners such as the erection and maintenance of buildings, providing of appliances, cleaning supplies, utensils, clothing, medical care and hygienic supplies is included in the term "keeping."
Although the $4.50 set forth in the police jury's ordinance exceeded the amount necessary for paying for the "feeding" of prisoners to be transferred, the sheriff still had latitude to negotiate for what it would cost to "keep" the transferred prisoners.
Your second question concerns whether the police jury is obligated to pay a bill submitted by an outside parish for housing transferred inmates that exceeds the amount of the parish ordinance.
As stated above, the police jury is responsible for any excess amount necessary to "keep" the prisoners. In this case, housing would be considered "keeping" as defined in Attorney General Opinion No. 87-493. Thus, it would seem that the police jury would be obligated to pay a bill submitted by an outside parish for housing transferred inmates.
Your third question inquires about whether the payment of a rate higher than the ($4.50) four dollars and fifty cents set forth in the parish ordinance for the housing of transferred prisoners obligates the police jury to continue paying the higher rate.
The payment of a rate higher than that set forth in the parish ordinance does not in and of itself create "a contract that supersedes the parish ordinance." As stated above, the police jury has the responsibility for paying not only the costs for "feeding" the transferred prisoners, but also for "keeping" them as well. "Keeping" costs exceed the amount of ($4.50) four dollars and fifty cents that is set forth in the parish ordinance for the "feeding" of prisoners. Thus, pursuant to La. R.S. 33:1432 (1), the police jury must pay any amount in excess of ($4.50) four dollars and fifty cents for the "keeping" of transferred prisoners.
Question four concerns whether the police jury's declaration that payment for transferred prisoners shall only be in accordance with the local ordinance limits the amount to be paid other, outside parishes for keeping transferred prisoners.
Despite the police jury's statement pertaining to the payment for transferred prisoners, the police jury still has responsibility for the cost of both "feeding" and "keeping" the prisoners. La. R.S. 33:1432
(1). No Louisiana law provides that a police jury's duty vis-á-vis transferred prisoners as set forth in La. R.S. 33:1432 (1), is abrogated by a police jury's proclamation that it shall in the future only pay in accordance with its local ordinance. Thus, the law allows a police jury to make whatever statements it wishes with respect to the payment of transferred prisoners; however, any such statements do not limit the police jury's obligation to pay the cost of both feeding and keeping transferred prisoners.
Your final question asks whether East Carroll Parish Police Jury could expect to receive reimbursement for the more costly payment of prisoners kept at the Richland Detention Facility who were erroneously designated as "security risk" inmates. The answer is no.
The sheriff, not the police jury, has the final say, in determining what inmates qualify as security risks. A "security risk prisoner" is a [p]risoner who presents a security or health risk to himself or other prisoners or to the public." La. R.S. 15:706. This statute gives the sheriff of one parish the authority to transfer a "security risk prisoner" to another prison through contract with the sheriff of another parish. La. R.S. 15:706 A (1). The broad language of the statute allows any particular prisoner to be designated as "a security or health risk to himself or other prisoners or to the public." La. R.S. 15:706 does not specify who has authority to designate a prisoner a "security risk." However, under La. R.S. 15:704, a sheriff has a duty to "preserve the peace and apprehend all disturbers thereof, and other public offenders. . . ." A prisoner can be designated a security risk by a sheriff not only because the statute implies it, but also because the designation is within the scope of a sheriff's "inherent powers." See, e.g., La. Const., Art. 5, Sec. 27.
La. R.S. 15:304, the state statute requiring parishes to pay expenses attending criminal proceedings, lends credence to the argument that reimbursement is not based on the law. This statute provides, in pertinent part, as follows:
 All expenses incurred in the different parishes of the state or in the city of New Orleans by the arrest, confinement, and prosecution of persons accused or convicted of crimes, their removal to prison, the pay of witnesses specifically provided for by law, jurors and all prosecutorial expenses whatever attending criminal proceedings shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be. The expenses shall be paid by the parish treasurer or by the city of New Orleans after an account of the expenses shall be duly certified to be correct by the presiding judge and the clerk of court. The fees, salaries, and expenses to be paid shall be fixed and regulated by the parish or city authority unless otherwise provided by law; . . .
Although there is no law directly on point as the above-cited statutes suggest, the great weight of authority leans heavily towards the conclusion that police juries may not escape their statutory obligation to pay sheriffs for inmates whom they (sheriffs) have previously deemed to be security risk inmates by making their own post hoc reclassification and then seeking reimbursement. To permit police juries to operate in such manner would have the effect of undermining the entire legislative scheme put in place to deal with the problem of security risk inmates.
We hope that this sufficiently answers your inquiry, but if we can be of further assistance, please do not hesitate to contact us.
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: ___________________________ Christopher D. Matchett Assistant Attorney General
CCF, Jr.:CDM:Irs